## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, Suite 301 Washington, D.C. 20036, <br><br>and<br><br>STEPHEN ALBRECHT, RODERICK S. BASHIR, EMANUEL PASTREICH, DAVID HUERTA, APRIL VERRETT, EDWARD J. MANKO, CHRISTOPHER B. BOUVIER, INGA CRAREY, THOMAS LAMARTINA, JOHN J. SHERIDAN, KEVIN MCGARR, AND FRANK A. MAXSON, TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, Suite 301 Washington, D.C. 20036,<br><br>Plaintiffs,<br><br>v.<br><br>BAYVILLE HEALTHCARE, LLC d/b/a CRYSTAL LAKE REHABILITATION AND HEALTHCARE CENTER d/b/a CRYSTAL LAKE 395 Lakeside Boulevard Bayville, NJ 08721<br><br>Defendant. | Case No: 1:19-cv-833<br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:**<br><br>**U.S. Department of Labor Attn: Assistant Solicitor  for Plan Benefits Security 200 Constitution Ave., N.W. Washington, DC 20210**<br><br>**U.S. Department of Treasury Attn: Secretary of the Treasury 1500 Pennsylvania Avenue, NW Washington, D.C. 20220** |

**COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, REMITTANCE REPORTS, ATTORNEY'S FEES AND COSTS**

**Introduction, Jurisdiction and Venue**

1. This is a civil action brought by an employee benefit plan, and by the Trustees of an employee benefit plan, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145 and Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a), to collect unpaid collectively bargained contributions, interest, liquidated damages, supplemental contributions, remittance reports, and attorneys' fees and costs owed by the Defendant.

2. Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Service Employees International Union National Industry Pension Fund is administered in this District.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail on or about the date of filing.

## Parties

5. Plaintiff Service Employees International Union National Industry Pension Fund ("SEIU Pension Fund," "Pension Fund" or "Fund") is an employee pension benefit plan within the meaning of Sections 3(2), (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The SEIU Pension Fund is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The SEIU Pension Fund is administered at 1800 Massachusetts Avenue NW, Suite 301, Washington, DC

20036.

6. Plaintiff Trustees of the SEIU Pension Fund, Stephen Albrecht, Roderick S. Bashir, Emanuel Pastreich, April Verrett, David Huerta, Edward J. Manko, Christopher B. Bouvier, Inga Crarey, Thomas LaMartina, John J. Sheridan, Kevin McGarr, and Frank A. Maxson are the duly authorized Trustees of the SEIU Pension Fund whose duty it is to administer the SEIU Pension Fund for the benefit of the participants and beneficiaries of the SEIU Pension Fund. Plaintiff Trustees are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are authorized and empowered to maintain this action.

7. Defendant Bayville Healthcare, LLC d/b/a Crystal Lake Rehabilitation and Healthcare Center d/b/a/ Crystal Lake ("Bayville") is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Section 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

8. Upon information and belief, Defendant Bayville is a limited liability company incorporated in the state of New Jersey, with a mailing address of 395 Lakeside Boulevard, Bayville, NJ 08721.

**Factual Background**

9. At all relevant times, 1199 Service Employees International Union, United Healthcare Workers East, NJ Region ("Union") has been the exclusive bargaining representative for all full-time and regular part-time Nurse Aides, Orderlies, Licensed Practical Nurses, Registered Nurses, Cooks, Dietary Aides, Housekeeping, Porters, Maintenance, and Elevator Operators employed by Defendant.

10. Bayville was a party to a Collective Bargaining Agreement ("CBA" or "Agreement") establishing the terms and conditions of employment for all full-time and regular

part-time Nurse Aides, Orderlies, Licensed Practical Nurses, Registered Nurses, Cooks, Dietary Aides, Housekeeping, Porters, Maintenance, and Elevator Operators employed by Defendant that was effective for an initial term of March 13, 2008 through February 28, 2013 ("2008 CBA"). A true, correct and complete copy of the 2008 CBA is attached as Plaintiffs' Exhibit 1.

11. Pursuant to a November 7, 2012 arbitration award ("Morris Tuchman Award"), the 2008 CBA was amended and extended to remain effect through June 30, 2016. A true, correct and complete copy of the Morris Tuchman Award is attached as Plaintiffs' Exhibit 2.

12. Thereafter, Bayville signed a Memorandum of Agreement ("MOA") further agreeing to be bound to the 2008 CBA, as amended by the Morris Tuchman Award, through June 30, 2016. A true, correct and complete copy of the MOA is attached as Plaintiffs' Exhibit 3.

13. Upon information and belief, the CBA expired on June 30, 2016 and Bayville and the Union have yet to negotiate a successor Collective Bargaining Agreement.

14. The CBA states that Bayville is obligated to remit monthly contributions and remittance reports to the SEIU Pension Fund on behalf of all employees covered by the Agreement. Ex. 1 at 25; Ex. 2 at 19, 22. Monthly contributions are due in an amount equal to 2.5% of the gross earnings of each employee covered by the Agreement. Ex. 2 at 19. The CBA also states that Bayville is required to pay supplemental contributions to the Fund in accordance with the Preferred Schedule of the Pension Fund's Rehabilitation Plan. Ex. 2 at 19, 22. Contributions and reports are due to the Fund or before the 15th day of the month following the month in which work was performed. Ex. 1 at 25-26.

15. Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, employers who are obligated to make contributions to a multi-employer employee benefit plan must do so in

accordance with the terms of the applicable collective bargaining agreement.

16. Under the terms of the Agreement, and by submitting reports and contributions to the Fund, Bayville also agreed to be bound by the SEIU Pension Fund's Agreement and Declaration of Trust ("Trust Agreement"), and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by the Trust Agreement, "including collection policies, receipt of which is hereby acknowledged." Ex. 1 at 26. A true and correct copy of the Trust Agreement is attached as Plaintiffs' Exhibit 4. Under the Trust Agreement, Trustees are empowered to create and enforce a collection policy for the assessment of unpaid and delinquent contributions. *See* Ex. 4. Accordingly, and as discussed in the CBA, Defendants are obligated to remit contributions to the Fund in accordance with the Statement of Policy for Collection of Delinquent Contributions ("Collections Policy") adopted by the Trustees. A true and correct copy of the Collections Policy is attached as Exhibit 5.

17. Article 30.3(b) of the CBA and Section 3.1 of the SEIU Pension Fund's Trust Agreement provide that Bayville must submit complete remittance reports to the SEIU Pension Fund with the employer's contributions. Ex. 1 at 26; Ex. 5, Sec. 3.1. The remittance report must contain the names of each covered employee and the gross earnings of each covered employee during the reporting month. Ex. 1 at 26; Ex. 5, Sec. 3.1.

18. Section 3.2 of the Trust Agreement and Section 2 of the Collection Policy provide that an employer delinquent in its contribution obligations to the SEIU Pension Fund and the subject of a collection lawsuit is liable for interest at the rate of ten percent (10%) per annum, liquidated damages at the greater of the interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions after the commencement of legal action, and the Fund's attorneys' fees and costs associated with the collections action. Ex. 4, Sec. 3.2; Ex. 5, Sec. 2.

19. Pursuant to the Pension Protection Act of 2006, 29 U.S.C. § 1085, *et seq.* ("PPA"), the SEIU Pension Fund was determined to be in critical status for the plan years beginning January 1, 2009, January 1, 2010, January 1, 2011, January 1, 2012, January 1, 2013, January 1, 2014, January 1, 2015, January 1, 2016, January 1, 2017, and January 1, 2018. Participating employers in the Fund were notified of this status via letters sent April 30, 2009, April 30, 2010, April 30, 2011, April 30, 2012, April 30, 2013, April 28, 2014, April 28, 2015, April 28, 2016, April 28, 2017, and April 28, 2018. Copies of these letters are attached as Plaintiffs' Exhibit 6.

20. For plans in critical status, the PPA requires that all contributing employers pay to the plan a surcharge to help correct its financial situation. The amount of the surcharge is equal to a percentage of the amount an employer is otherwise required to contribute to the plan. For the SEIU Pension Fund, a five percent (5%) surcharge was applicable in the initial critical year (2009), and a ten percent (10%) surcharge was applicable in 2010 and for each succeeding plan year thereafter in which the plan is in critical status, until the bargaining parties agree to a Collective Bargaining Agreement that implements one of the supplemental contribution schedules in the Rehabilitation Plan adopted by the SEIU Pension Fund, or the Default Schedule is imposed on the participating employer. Participating employers were notified of the Rehabilitation Plan adopted by the SEIU Pension Fund in November 2009. A copy of this letter is attached as Plaintiffs' Exhibit 7.

21. In accordance with the PPA, Defendant was required to pay supplemental contributions to the Fund. Specifically, under the express terms of the CBA, Bayville was required to pay contributions in accordance with the Preferred Schedule of the Rehabilitation Plan. Ex. 2 at 19, 22; *see* Ex. 5. Thus, in addition to the contributions due to the Fund under the

base terms of the CBA, Defendant was required to pay supplemental contributions in an amount equal to 27.7% of all contributions otherwise due for the months of July 2012 through June 2013. Ex. 2 at 19, 22. Effective July 1, 2013, Defendant was required to pay supplemental contributions in an amount equal to 37.6% of all contributions otherwise due. *Id.* Effective July 1, 2014, Defendant was required to pay supplemental contributions in an amount equal to 48.3% of all contributions otherwise due. *Id.* Effective July 1, 2015, Defendant was required to pay supplemental contributions in an amount equal to 59.8% of all contributions otherwise due.

22. Under the Multiemployer Pension Reform Act of 2014 ("MPRA"), participating employers are required to continue paying supplemental contributions in accordance with the schedule implemented in a Collective Bargaining Agreement that expired when the plan was in critical status if the parties fail to negotiate a successor contract that conforms to the rehabilitation plan within 180 days of the expiration of the parties' prior agreement. 29 U.S.C. § 1085(e)(3)(C)(ii), (iii).

23. Bayville and the Union failed to negotiate any successor agreement after the CBA expired on June 30, 2016 when the Fund was in critical status. *See* Ex. 4. Thus, Bayville was required to continue paying supplemental contributions in accordance with Preferred Schedule of the Rehabilitation Plan effective December 27, 2016, 180 days after the expiration of the CBA. Specifically, and in addition to the contributions due to the Fund under the base terms of the CBA, Defendant was required to pay supplemental contributions in an amount equal to 72.1% of all contributions otherwise due for the months of January 2017 through June 2017. Effective July 1, 2017, Defendant was required to pay supplemental contributions in an amount equal to 85.5% of all contributions otherwise due. Effective July 1, 2018, Defendant was required to pay supplemental contributions in an amount equal to 99.9% of all contributions otherwise due.

24. Any failure to make a supplemental contribution payment shall be treated as a delinquent contribution under Section 515 and shall be enforceable as such. 29 U.S.C. §§ 1085(c)(7), (e)(3), (e)(7).

25. During the period of July 2016 through January 2019 and continuing to the present, Defendant has failed to remit certain contractually and statutorily required reports and contributions, has late paid certain contractually and statutorily contributions, and has failed to pay certain resulting interest charges, liquidated damages due to the SEIU Pension Fund. Bayville also failed to submit any report or contribution for the months of September 2017, and November 2018 through February 2019.

26. By reason of the filing of this Complaint, Defendant is also liable for the Fund's attorneys' fees and costs under the Fund's Collections Policy and ERISA Section 502(g)(2). Ex. 5; 29 U.S.C. 1132(g)(2).

27. Prior to commencing this lawsuit, the Fund sent several letters and attempted to directly contact Defendant in an attempt to collect the outstanding contributions, interest, liquidated damages, and remittance reports due to the Fund. Defendant has failed or refused to remit the owed amounts. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the Fund and remit the outstanding reports, contributions, interest, or liquidated damages.

## **COUNT I**

28. Plaintiff's reallege and incorporate paragraphs 1 through 27.

29. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1332(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

30. Defendant is obligated, under the terms of the Collective Bargaining Agreement,

to provide remittance reports and contributions to the SEIU Pension Fund on behalf of the Defendant's employees, and pay interest and liquidated damages charged for unpaid or late paid contributions. The Defendant has failed to remit certain reports, contributions, and resulting interest and liquidated damages due for the period of July 2016 through February 2019 and continuing to the present**.**

31. For the periods of July 2016 through August 2017 and October 2017 through October 2018, Defendant owes the SEIU Pension Fund $49,700.12 in unpaid contributions, $6,565.25 in interest for unpaid and late paid contributions, and $9,940.03 in liquidated damages for unpaid and late paid contributions.

32. Defendant has also failed to submit any remittance report or contributions for the months of September 2017, November 2018, December 2018, January 2019, and February 2019. As a result, Defendants also owe unpaid contributions, interest, and liquidated damages for these delinquent months in an amount to be calculated by the Pension Fund once the Fund receives the outstanding remittance reports.

33. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), as well as the express terms of the CBA, Plaintiffs are entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

34. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. Declare that Defendant violated the CBA by failing to remit the owed reports, contributions, interest and liquidated damage to the Fund;

2. Enter judgment for all outstanding contributions due to the Fund for the period of July 2016 through the present;

3. Order Defendant to remit the delinquent remittance reports for September 2017, November 2018, December 2018, January 2019, and February 2019;

4. Enter judgment for the Fund for interest owed for late paid and unpaid contributions due in an amount equal to ten percent (10%) per annum;

5. Enter judgment for the Fund for liquidated damages owed for late paid and unpaid contributions due in an amount equal to the greater of the interest due or twenty percent (20%) of the delinquent contributions;

6. Enter judgment for Plaintiffs' attorneys' fees and costs, as required by the CBA, the Trust Agreement and Collections Policy, and Section 502(g) of ERISA;

7. Order Defendant to remit reports and contributions to the Fund in accordance with the collective bargaining agreements, Trust Agreement, Collections Policy, and governing law;

8. Retain jurisdiction of this case pending compliance with its Orders; and,

9. Grant such relief as the Court may deem appropriate.

Respectfully submitted,

    /s/ Matthew D. Watts
Matthew D. Watts (Bar No. 1030130)
Diana M. Bardes (Bar No. 1010075)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 Facsimile
mwatts@mooneygreen.com
Counsel for the Plaintiffs

Dated:  March 25, 2019

**CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)**

I hereby certify that on this 25th day of March, 2019, a true and correct copy of the foregoing COMPLAINT was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

    /s/ Matthew D. Watts
    Matthew D. Watts