UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BAYVILLE HEALTHCARE, LLC d/b/a CRYSTAL LAKE REHABILITATION AND HEALTHCARE CENTER d/b/a CRYSTAL LAKE,<br><br>Defendant. | Case No. 19-cv-833 (CRC) |

## MEMORANDUM OPINION

Plaintiffs in this ERISA action—the Service Employees International Union National Pension Fund and its trustees (collectively, "the Fund")—seek to recover unpaid contributions and associated damages from a New Jersey-based healthcare company. Despite having been properly served, the company has not responded to the Complaint or the Clerk's entry of default. Plaintiffs now request a default judgment, monetary damages, attorney's fees, and court costs. Because Plaintiffs have adequately established that the Defendant is liable and that they are entitled to all the requested relief, the Court will grant their motion and enter judgment against the company.

### I. Background

The Service Employees International Union National Pension Fund is an "employee pension benefit plan" and a "multiemployer plan" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq. ("ERISA"). The Fund is financed by contributions made by employers who are signatories to collective bargaining agreements. New Jersey-based Defendant Bayville Healthcare, LLC is one such employer.

Bayville is required under its collection bargaining agreement—as amended by an arbitration award and two memoranda of agreement—and the Fund's policy governing the collection of employer contributions ("SEIU's Collection Policy") to submit monthly reports and payments to the plan based on the number of hours worked by its covered employees. Toussaint Decl. ¶ 11. If Bayville fails to make the required contributions, the Fund is entitled to file suit to recover the unpaid contributions; interest on the unpaid contributions; either an additional assessment of interest on the unpaid contributions or liquidated damages provided for under the plan not in excess of 20 percent, whichever is higher; reasonable attorney's fees and costs; and other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

Bayville is also obligated to contribute "supplemental contributions" to the Fund under the Pension Protection Act of 2006 ("PPA") because the Fund has been in critical status since 2009. See 29 U.S.C. § 1085(a)(1)–(2); Toussaint Decl. ¶ 15–16. The collective bargaining agreement required Bayville to follow the Preferred Schedule of the Rehabilitation Plan, which sets the supplemental contributions due each month at a rate that is a percentage of the base contribution due. The rate increases yearly. Toussaint Decl. ¶ 17. For example, from July 1, 2016 through June 30, 2017, Bayville owed a supplemental contribution that equaled 72.1% of its base contribution each month. From July 1, 2017 through June 30, 2018, the supplemental rate was 85.5% of the contributions owed. From July 1, 2018 through June 30, 2019, the rate increased to 99.9%. And effective July 1, 2019, Bayville is required to supplement its contribution at a rate of 115.4% of what it owes each month. Toussaint Decl. 17; 2019 Memorandum of Agreement ¶ 4, Am. Compl. Ex. 4. Any failure to make a supplemental contribution payment under the PPA is treated as a delinquent contribution under ERISA, 29

U.S.C. §§ 1085(c)(7), (e)(3), (e)(7), which means the Fund can recover the unpaid supplemental contributions, interest, liquidated damages, and reasonable attorney's fees and costs.

Additionally, the Fund is permitted under its agreements with employers to conduct an audit of its payroll records to ensure that the remittance reports were accurate and to ensure that the employer made the appropriate contributions during the audit period. SEIU's Collection Policy § 4, Am. Compl. Exh. 6. If the audit reveals that the employer owes additional contributions, it is entitled to collect them, plus interest, liquidated damages, attorney's fees and—in some instances—the cost of the audit itself. Id. § 4(10), 5(3). The underreported and unpaid contributions discovered in an audit are owed in addition to any delinquent contributions calculated based on the remittance reports themselves.

In the original Complaint, the Fund alleged that Bayville "failed to remit certain reports, contributions, and resulting interest and liquidated damages due for the period of July 2016 through February 2019." Compl. ¶ 30. Bayville was properly served on April 3, 2019. It did not respond to the Complaint, however, and the Clerk of the Court entered default on April 30, 2019. The Fund then moved to amend its Complaint, which the Court granted, to add a count related to damages owed pursuant to an audit of Bayville's payroll for the years 2016 and 2017 conducted by the Fund detailing underreporting by Bayville. The Fund filed the Amended Complaint on July 23, 2019. Via email, without entering an appearance, Bayville requested an extension of the deadline to respond to the Amended Complaint. The Court granted the extension, but Bayville still failed to respond. With the Court's prompting, the Fund again sought entry of default. The Clerk obliged on September 16, 2019.

The Fund then petitioned the Court to enter a default judgment, seeking a monetary judgment against Bayville in the amount of $263,176.78 (plus additional interest), which

includes delinquent contributions for the period of July 2016 through September 2019, interest, liquidated damages, and audit testing fees, as well as $11,980.79 in attorney's fees and court costs. Mot. Default J. 18. Bayville—again without entering an appearance—sought an extension of time to respond to the Fund's Motion for Default Judgment. The Court granted the extension, but Bayville again failed to respond. The Court now holds that entry of default judgment in favor of the Fund is appropriate.

## II. Standard of Review

Default judgment is a two-step procedure. See, e.g., Boland v. Cacper Constr. Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015). First, a plaintiff requests that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Then, the plaintiff must move for entry of default judgment. Fed. R. Civ. P. 55(b). Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (internal citation omitted). "Default establishes a defaulting party's liability for the well-pleaded allegations of the complaint." Id. After establishing liability, the court must make an independent evaluation of the damages to be awarded and has "considerable latitude in determining the amount of damages." Id. The court may rely on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims. Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

## III. Analysis

The Court must determine whether a default judgment is appropriate and, if Bayville is liable, whether Plaintiffs are entitled to the manner and amount of relief they request. The Court

4

concludes that the company breached its duties under ERISA and the SEIU Collection Policy; therefore, Plaintiffs are entitled to the monetary relief requested.[1]

   A. Liability

The Court may enter default judgment when a defendant makes no request "to set aside the default" and gives no indication of a "meritorious defense." Fanning, 257 F.R.D. at 7. Bayville, as noted above, has not responded to the Complaint since being served in April 2019, even though it did contact the Court twice. First, via email and without entering an appearance, Bayville sought an extension of time to respond to the Amended Complaint. The Court granted its request, but Bayville failed to take advantage of the extension. The Clerk of the Court then entered default in September, and the Fund moved for a default judgment in October. Bayville—again without entering an appearance—sought an extension of time to respond. The Court again granted the extension, and Bayville again failed to respond. Because Bayville has neither responded to the Amended Complaint or the Clerk's entry of default nor given any indication of a meritorious defense, the Court concludes that entry of default judgment against the Defendant is appropriate.

The Court thus holds that Bayville is liable based on the Fund's well-pleaded allegations. See Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 67. ERISA requires employers to make contributions to multiemployer plans "in accordance with the terms and conditions of" the relevant collective bargaining agreements. 29 U.S.C. § 1145. The collective bargaining

---

[1] Section 502(e)(2) of ERISA provides for federal jurisdiction "in the district where the plan is administered." 29 U.S.C. § 1132(e)(2). The SEIU Pension Fund is administered in the District of Columbia, Am. Compl. ¶ 3; therefore, the Court has jurisdiction over the case. Plaintiffs also filed the complaint within ERISA's three-year statute-of-limitations period. See 29 U.S.C. § 1113.

agreement specifies that contributions, remittance reports, and the supplemental contributions are due on or before "the 15th day of the month following the month in which work was performed." Toussaint Decl. ¶ 11. And the PPA obligates employers within Funds in critical states to make monthly supplemental contributions. 29 U.S.C. § 1085(a)(1)–(2). The Fund makes two distinct claims based on these requirements: (1) It alleges Bayville has underpaid its contributions and required supplemental contributions based on the information contained in the monthly reports Bayville submitted; and (2) the Fund also alleges that an audit of Bayville's 2016 and 2017 payroll revealed that the company underreported employee wages in some of its remittance reports and thus owes additional contributions based upon the difference. The Court finds, for both claims, that Bayville is liable for the delinquent contributions themselves, interest, liquidated damages, and attorney's fees and costs. For the contributions due based on underreported wages, Bayville is also on the hook for the audit testing fees.

    B. <u>Damages</u>

The next issue before the Court is the amount of damages due, and "plaintiffs must prove these damages to a reasonable certainty." <u>Elite Terrazzo Flooring, Inc.</u>, 763 F. Supp. 2d at 68. Under ERISA, employers are required to pay any delinquent contributions, interest on unpaid contributions, liquidated damages at a rate of up to 20 percent or an additional interest assessment at the rate provided under the plan (whichever is higher), and legal fees. 29 U.S.C. § 1132(g)(2). When a defendant has failed to respond, the Court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages.

As support for their requested damages, Plaintiffs have submitted declarations from Holdjiny Toussaint, an Assistant Contribution Compliance Manager at the Fund, Andre Joseph, a

Payroll Review Manager at the Fund who oversees the performance of audits of payroll records for contributing employers, and Matthew D. Watts, the Fund's attorney of record and an associate at Mooney, Green, Saindon, Murphy & Welch, P.C. ("Mooney Green"). They each attest to having personal knowledge of the facts regarding the assessment of contributions owed by Bayville or the costs incurred in the current suit. Toussaint Decl. ¶ 2; Joseph Decl. ¶ 2; Watts Decl. ¶ 1. Courts in this district, including this one, have accepted similar declarations in support of motions for default judgment regarding monetary damages owed to multiemployer employee pension benefit plans. See Cacper Constr. Corp., 130 F. Supp. 3d at 383; Providence Constr., 304 F.R.D. at 37; Elite Terrazzo Flooring, 763 F. Supp. 2d at 69.

  1. *Remittance Reports*

First, Mr. Toussaint's declaration details the amounts owed for delinquent contributions, interest (through October 31, 2019), and liquidated damages from July 2016 through September 2019. Toussaint Decl. ¶ 31. Mr. Toussaint affirms that Bayville reported but failed to pay all the contributions due to the Fund for covered work performed for the months of July 2016 through August 2017 and October 2017 through October 2018. Toussaint Decl. ¶ 19. Based on the remittance reports submitted, the Court finds that Bayville owes the Fund contributions in the amount of $46,293.70, interest on the delinquent contributions in the amount of $8,890.46, and liquidated damages in the amount of $13,458.05. Toussaint Decl. ¶ 26.

Second, Bayville failed to submit any remittance reports or contributions for the months of September 2017 and November 2018 through September 2019. Toussaint Decl. ¶ 19. Without the reports, plaintiffs are entitled to judgment based on reasonable estimates of hours worked by employees in covered employment. See, e.g., Nat'l Shopmen Pension Fund v.

7

Builders Metal Supply Inc., 304 F.R.D. 47, 50 (D.D.C. 2014). The parties have an agreed-upon way to make these estimates:

> If the Fund Office has not received the proper remittance reports to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent contributions remitted to the Fund and the Employer shall be deemed delinquent in its contributions in that amount, as a minimum, in any subsequent legal action.

Toussaint Decl. ¶ 27 (quoting SEIU's Collection Policy § 2(6), Am. Compl. Exh. 6). Using that procedure, the Court finds that Bayville owes, at a minimum, $142,814.62 in delinquent contributions for the months it failed to submit reports, $8,085.86 in interest (through October 31, 2019), and $28,607.15 in liquidated damages. Toussaint Decl. ¶ 29.

The amounts above total $248,149.84.

### 2. *The Audit*

The Fund's audit of Bayville's remittance reports for years 2016 and 2017 found that Bayville underreported and thus failed to pay full contributions for covered work performed in those years. Joseph Decl. ¶ 19. The audit revealed that Bayville failed to pay $18,780.22 in contributions and $14,204.75 in supplemental contributions over that two-year period. Joseph ¶ 19. The interest on these delinquent payments amounts to $7,308.65 (as of May 20, 2019), and the liquidated damages are $1,649.25. Joseph Decl. ¶ 19. Because these amounts reach the threshold agreed to by Bayville, it also owes audit testing fees, which totaled $6,069.04. Joseph Decl. ¶ 19. In total, Bayville owed $48,011.91 under the audit as of May 20, 2019. Joseph Decl. ¶ 19 (citing Am. Compl. Exh. 10). Before the Fund filed its Amended Complaint, however, Bayville made a partial payment of $32,984.97 toward what it owed under the audit. Joseph Decl. ¶ 19 (citing Am. Compl. Exh. 10). Therefore, the Court finds that Bayville continues to owe $15,026.94. Joseph Decl. ¶ 21.

C. Attorney's Fees & Costs

Aside from contractual damages, ERISA also requires defendants to pay plaintiffs' "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D). Bayville also agreed to pay attorney's fees for any payments sought from an audit. SEIU's Collection Policy § 5(2), Am. Compl. Exh. 6. The Fund's attorneys—lawyers from Mooney Green—charged $220 per hour for partner work, $195 per hour for associate work, and $120 per hour for paralegal work. Watts Decl. ¶ 17. Four partners provided a combined total of 9.3 hours of legal services, totaling $2,046. One associate—the lead counsel on the case—billed 41.8 hours, totaling $8,151. And a paralegal worked for 10.4 hours on the matter, totaling $1,248. In sum, the Fund seeks $11,445 in attorney's fees. Watts Decl. ¶¶ 9–14, 17.

Mr. Watts' declaration outlines the individual tasks he and his colleagues performed, from preparing the complaint to drafting the motion for default judgment. Watts Decl. ¶ 17 & Ex. A (billing records). This declaration constitutes the type of "detailed . . . documentary evidence" on which the Court may rely, see Fanning, 257 F.R.D. at 7, and the Court concludes that Mooney Green has justified the hours expended in this case.

The Court likewise finds the requested rates to be reasonable. In support of the requested attorney's fees, Mr. Watts attests that Mooney Green's hourly rates "are significantly below market rates for attorneys of commensurate experience performing similar legal services." Watts Decl. ¶ 20 (detailing the rates regarded as "reasonable" by the U.S. Attorney's Office for the District of Columbia outlined in its current Laffey matrix). He also notes that the rates "are less than" or similar to "those charged by other firms of reasonably comparable skill, experience and reputation in this area of practice." Watts Decl. ¶ 21–22 (citing cases in which courts of this District have approved fees for attorneys that charged more per hour than Mooney Green has

here, as well as cases that have approved flat hourly rates for all attorney work that match those charged here by only Mooney Green partners). Given that the firm charged below-market rates, the Court finds the rates to be reasonable. See, e.g., Providence Constr. Corp., 304 F.R.D. at 37 (holding that "Funds are entitled to an attorneys-fee award calculated at market rates . . ."). The Court therefore determines that the Fund is entitled to $11,445 in attorney's fees.

Additionally, plaintiffs are entitled to recover court fees under ERISA. 29 U.S.C. § 1132(g)(2)(D). Here, Mooney Green incurred a $400 court filing fee, a $127.84 process server fee, and $7.95 in postage related to the case. Watts Decl. ¶¶ 17. Thus, the Fund is entitled to $535.79 in court costs.

## IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Entry of Default Judgment. The Court will issue an order consistent with this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: December 23, 2019